UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., | Case No.: 5:13-CV-02030-EJD |
| Plaintiff, | **ORDER GRANTING APPLICATION FOR DEFAULT JUDGMENT** |
| v. | |
| JAMES PAUL DELEON, et al., | **[Re: Docket No. 14]** |
| Defendants. | |

Plaintiff J & J Sports Production, Inc. ("J & J") brought this action under 47 U.S.C. § 605 alleging that Defendants James Paul Deleon and Robert Michael Deleon, individually, doing business as XL Grindhouse, and Delfam Industries, LLC, an unknown business entity doing business as XL Grindhouse (hereinafter "Defendants"), unlawfully intercepted and displayed a broadcast to which J & J holds exclusive distribution rights. Defendants did not appear and default was entered against them by the Clerk on July 23, 2013. J & J now brings a Motion for Default Judgment ("Motion") against Defendants. Pursuant to Civil Local Rule 7–1(b), the Court finds this matter appropriate for determination without oral argument. For the reasons discussed below, Plaintiff's Motion for Default Judgment is GRANTED.

## I. Background

Plaintiff J & J Sports Productions, Inc. is a sports and entertainment programming distributor alleging it secured the exclusive nationwide commercial distribution rights to broadcast the "Floyd Mayweather, Jr. v. Miguel Cotto, WBA Super World Light Middleweight Championship Fight Program" (the "Program"), which telecast nationwide on May 5, 2012. See Compl. ¶ 21, Dkt. No. 1. In order for commercial establishments to broadcast the boxing match, the entity must purchase a license from Plaintiff. Id. at ¶ 22. This type of license authorizes businesses to publicly show the Program. Id.

On May 5, 2012, investigator Marlon Alvarenga ("Alvarenga") observed the Program being displayed at Defendants' commercial establishment, XL Grindhouse, located in Salinas, California. Plaintiff alleges that Defendant intercepted the Program unlawfully, and intentionally exhibited it for the purpose of direct or indirect commercial advantage.

According to Alvarenga, the maximum capacity at XL Grindhouse is approximately 41 individuals. Alvarenga counted 12 people in XL Grindhouse during the first headcount, 9 people on the second count, and 23 people on the third and final headcount taken during the broadcast. See Decl. of Affiant at 2. Defendants did not charge a cover to enter XL Grindhouse while the Program was shown, nor required patrons to purchase food or drink. Id. Alvarenga observed three televisions and one projector inside the establishment, all playing the boxing match Plaintiff held license too. Id.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55(b), the Court may enter default judgment against a defendant who has failed to plead or otherwise defend an action. "The district court's decision whether to enter default judgment is a discretionary one." Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).

2
Case No.: 5:13-CV-02030-EJD
ORDER GRANTING APPLICATION FOR DEFAULT JUDGMENT

The Ninth Circuit has provided seven factors for consideration by the district court in exercising its discretion to enter default judgment, known commonly as the "Eitel factors." They are: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect and; (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. Eitel v. McCool, 782 F.2d 1470, 1471–72 (9th Cir. 1986). When assessing these factors, all factual allegations in the complaint are taken as true, except those with regard to damages. Televideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917–18 (9th Cir. 1987).

### III. Discussion

#### a. Eitel Factors

Many of the Eitel factors favor entry of default judgment in this case. Considering the first factor, if Plaintiff's application for default judgment were to be denied, it would leave Plaintiff without a remedy because Defendants have refused to litigate this action. Therefore, Plaintiff would be prejudiced if the Court were to deny its application for default judgment. This factor weighs in favor of default judgment. See J & J Sports Prods, Inc. v. Concepcion, 2011 WL 2220101, at *2 (N.D. Cal. June 7, 2011). In contrast, Plaintiff's request for maximum statutory damages weighs against granting an entry of default judgment, particularly because the amount requested appears disproportionate to the harm alleged. See Eitel, 782 F.2d at 1472. However, given that the Court may address the reasonableness of Plaintiff's request when deciding the question of damages, the Court need not deny default judgment on this factor alone. See Joe Hand Promotions, Inc. v. Mujadidi, 2012 WL 3537036, at *3 (N.D. Cal. Aug. 14, 2012) (noting that a request for maximum possible statutory damages "is not enough on its own to bar a default

3

Case No.: 5:13-CV-02030-EJD
ORDER GRANTING APPLICATION FOR DEFAULT JUDGMENT

judgment . . . as it may be addressed by the Court in deciding what damages should be awarded, assuming that a default judgment is otherwise appropriate.").

As to the second and third Eitel factors, Plaintiff's substantive claims appear meritorious and its complaint is sufficiently plead. Plaintiff has alleged that Defendants violated two sections of Title 47 and the alleged activities of Defendant appear to have violated one or both of those sections. Plaintiff has stated the applicable laws pursuant to which the court may provide relief. These factors weigh in favor of default judgment.

As to the fourth factor, the damages in this case cannot exceed the amounts specified in 47 U.S.C. § 605 (for reasons more fully explained below), and the maximum amount allowable for the tort of conversion. Accordingly, statutory damages cannot exceed $10,000 and enhanced damages may not exceed $100,000. See 47 U.S.C. § 605(e)(3)(C)(i)(II); 47 U.S.C. § 605(e)(3)(C)(ii). Plaintiff is seeking $2,200 in damages for conversion, or the amount Defendants would have been required to pay for the license. The relatively small sum of money at stake and the Court's discretion in awarding enhanced damages weigh in favor of default judgment.

As to the fifth factor, there is no dispute of material fact. Indications that there is a dispute of material fact can weigh against entry of default judgment. See Eitel, 782 F.2d at 1471–72. Here, Defendants have not disputed any of Plaintiff's contentions since Defendants failed to respond to either the Complaint or this motion, and all material facts pled in the Complaint are supported or explained by a declaration.

Considering the sixth factor, it is unlikely that default was the result of excusable neglect. This action was filed over one year ago and the docket reveals that Defendants were properly noticed of this action by substitute service. In addition, Defendants were served with a copy of the instant application. Defendants failed to respond despite these notifications. This factor weighs in favor of default judgment.

4

Case No.: 5:13-CV-02030-EJD
ORDER GRANTING APPLICATION FOR DEFAULT JUDGMENT

Finally, the seventh factor supports a default judgment because "although federal policy favors decisions on the merits, Rule 55(b)(2) permits entry of default judgment in situations such as this where defendants refuse to litigate." J&J Sports Prods., Inc. v. Concepcion, 2011 U.S. Dist. LEXIS 60607, at *5 (N.D. Cal. June 7, 2011).  Therefore, this general policy is outweighed by the more specific considerations, and the motion to enter default judgment will be granted.

Accordingly, the Court GRANTS Plaintiff's Motion for Default Judgment.

### b. Calculation of Damages

Plaintiff requests $10,000 in statutory damages for violation of 47 U.S.C. § 605(e)(3)(C)(i)(II), and $100,000 in enhanced damages for willful violation of 47 U.S.C. § 605(e)(3)(C)(ii).  See Mot. at 11,14.  Plaintiff also seeks $2,200 in conversion damages, the amount Defendant allegedly would have been required to pay had Defendant licensed the Program from Plaintiff.  See Mot. at 20.

#### i. Statutory Damages

Plaintiff requests $10,000 in statutory damages as a result of the alleged violation of 47 U.S.C. § 605(e)(3)(C)(i)(II), which prohibits any person from receiving or transmitting "wire or radio" signals except through authorized channels.  See Mot. at 11.  More specifically, the statute "'prohibits commercial establishments from intercepting and broadcasting to its patrons satellite cable programming.'"  J & J Sports Prods., Inc. v. Ro, No. 09–CV–02860, 2010 U.S. Dist. LEXIS 21425, at *7, 2010 WL 668065 (N.D. Cal. Feb. 19, 2010) (quoting J & J Sports Prods., Inc. v. Guzman, No. 08–CV–05469, 2009 U.S. Dist. LEXIS 32273, at *5, 2009 WL 1034218 (N.D. Cal. Apr. 16, 2009)).  The statute provides statutory damages ranging from $1,000 to $10,000 for each violation.  47 U.S.C. § 605(e)(3)(C)(i)(II).

Plaintiff states that Defendants violated Section 605 because "[w]ith full knowledge that the Program was not to be intercepted, received, published, divulged, displayed, and/or exhibited

5

by commercial entities unauthorized to do so, . . . Defendants . . . did unlawfully intercept, received, publish, divulge, display, and/or exhibit the Program at the time of its transmission at their commercial establishment . . .." Compl. ¶ 24.  However, Plaintiff fails to state the actual means of signal transmission used, which is necessary to determine whether Plaintiff has sufficiently stated a claim pursuant to Section 605.  See Mot. at 8 (stating "Plaintiff cannot determine the precise means that the Defendants used to receive the Program unlawfully").  Indeed, the declaration of Plaintiff's investigator, Marlon Alvarenga, does not state whether the establishment has a satellite dish or whether a cable box was affirmatively visible.  See Decl. of Affiant at 1-2.  Plaintiff argues that the court has discretion to award significant damages "[e]ven in . . . cases of commercial signal piracy where there has been no egregious circumstances noted[.]" Mot. at 11.  It is undisputed Defendants did not charge a cover for patrons to enter XL Grindhouse to watch the Program, nor did Defendants increase prices, or require food and drink purchases.  There were also very few patrons in the bar and only three televisions and one projector broadcasting the Program.  See Decl. of Affiant at 1.  Furthermore, Plaintiff also presents no evidence Defendants are repeat offenders.   Given these facts, the Court in its discretion finds the minimum statutory damage amount to be appropriate.

Accordingly, the court finds that Plaintiff is entitled to the minimum statutory damages allowed, $1,000.

### ii. Enhanced Damages

Plaintiff also requests enhanced damages pursuant to Section 605(e)(3)(C)(ii). Mot. at 14. This section authorizes the Court to award up to $100,000, in its discretion, upon finding that the violation "was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii).

The Ninth Circuit has not set forth controlling factors for the determination of when enhanced damages are appropriate in this context, but various factors specific to this unique line of cases have been considered by district courts. These include the "use of cover charge, increase in food price during programming, presence of advertisement, number of patrons, number of televisions used, and impact of the offender's conduct on the claimant." Concepcion, 2011 U.S. Dist. LEXIS 60607, at *10. Enhanced damages have also been awarded when the defendant has violated Section 605 on previous occasions. See J & J Sports Prods., Inc. v. Paniagua, 2011 WL 996257, at *2 (N.D. Cal. Mar 21, 2011).

The Court does not find that an award of maximum damages under Section 605 is appropriate here. There is no evidence of significant "commercial advantage or private financial gain" in the instant case, which weakens the case for an award of greatly enhanced statutory damages. Plaintiff has presented evidence that Defendants had three television sets and one projector in their commercial establishment that displayed the Program. See Decl. of Affiant at 1. Plaintiff also asserts that there were between 9 to 23 patrons present during its investigation. See Id. However, as already discussed, there is no evidence that Defendants assessed a cover charge, required a minimum purchase from patrons, or had a special premium on food and drinks on the night of the fight. See Kingvision Pay–PerView, Ltd. v. Backman, 102 F. Supp. 2d 1196, 1198 n. 2 (N.D. Cal. 2000) (stating that "[a]n establishment that does not promote itself by advertising the Program, does not assess a cover charge, and does not charge a special premium for food and drinks hardly seems like the willful perpetrators envisioned by the statute's framers.").

In light of the above mentioned facts, the Court does not agree with Plaintiff that the maximum enhanced damages award is warranted. Although Plaintiff cites to several out-of-district cases to support its request for maximum enhanced damages possible, see Mot. at 14–19,

7
Case No.: 5:13-CV-02030-EJD
ORDER GRANTING APPLICATION FOR DEFAULT JUDGMENT

Plaintiff has not cited any binding precedent or identified any specific circumstances that justify such a high award here.

Therefore, the Court GRANTS Plaintiff's request for enhanced damages, but concludes that an award of $2,200, the value of the commercial license to air the program, is more than adequate and just to compensate Plaintiff for lost profits and to deter Defendants' future infringement.

### iii. Conversion

Plaintiff also seeks $2,200 in damages for conversion under California Civil Code § 3336. Mot. at 20. Damages for conversion are based on the value of the property at the time of conversion. See Tyrone Pac. Intern., Inc. v. MV Eurychili, 658 F.2d 664, 666 (9th Cir. 1981). Here, Plaintiff has shown that it owns the right to distribute the boxing match at issue and has properly alleged the misappropriation of that right to distribute the program. As to damages, the "value of the property" was the value of the commercial license, or $2,200.

Accordingly, the court awards Plaintiff $2,200 in damages for conversion.

## IV. Conclusion

Based on the foregoing, Plaintiff's application for default judgment (Docket Item No. 14) is GRANTED. Judgment shall be entered in favor of Plaintiff and against Defendants in the amount of $5,400 in total damages. The clerk shall close the file.

**IT IS SO ORDERED**

Dated: January 14, 2014

_____
EDWARD J. DAVILA
United States District Judge